IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANGELA A. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:15cv234 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Angela A. Smith ("Smith") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Smith alleges that the Administrative Law Judge ("ALJ") erred by improperly assessing Smith's mental impairments and credibility. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Smith's Motion for Summary Judgment (Dkt. No.14) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Smith failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Smith protectively filed for SSI on January 10, 2011, claiming that her disability began on February 1, 2009, due to depression, attention deficit hyperactivity disorder ("ADHD"), personality disorder, chronic impulsivity, and schizoid personality disorder.[2] R. 153–55, 164, 168. The state agency denied Smith's applications at the initial and reconsideration levels of review. R. 64–72, 74–83. On October 22, 2013, ALJ Jeffrey J. Schueler held a hearing to consider Smith's claims for SSI. R. 31–56. Counsel represented Smith at the hearing, which included testimony from vocational expert ("VE") Robert Jackson.

On November 18, 2013, the ALJ entered his decision analyzing Smith's claim under the familiar five-step process[3] and denying her claim for benefits. R. 14–25. The ALJ found that

---

ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] When a claimant files an application after the month she first meets all the other requirements for eligibility, SSI is not payable until the month after the month in which the application was filed. 20 C.F.R. § 416.335.

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

Smith suffered from the severe impairments of depression, ADHD, schizoid personality disorder, and insomnia.[4] R. 16.

The ALJ found that Smith had the following degrees of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: no restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. R. 18; 20 C.F.R. § 416.920a(c). The ALJ determined that Smith's mental impairments did not meet or medically equal a listed impairment, and specifically that Smith's depression did not meet Listing 12.04, her anxiety and ADHD did not meet Listing 12.06, and her schizoaffective personality disorder did not meet Listing 12.03. R. 19–20. The ALJ concluded that Smith retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels.[5] R. 20. However, the ALJ limited Smith to low-stress work, defined as only occasional changes in job setting or decision making, with only occasional interaction with co-workers or the public. The ALJ determined that Smith could perform jobs that exist in significant numbers in the national economy, such as cleaner, warehouse worker and assembler. R. 24. Thus, the ALJ concluded that Smith was not disabled. R. 25. Smith appealed the ALJ's decision and the Appeals Council denied her request for review on March 25, 2015. R. 1–3.

---

[4] The ALJ also determined that Smith suffered from the following non-severe physical impairments: hypothyroidism, anemia, gastroesophageal reflux disease, lateral epicondylitis of the right elbow, and obesity. R. 17.

[5] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by her and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id. The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567(a).

3

# ANALYSIS

### A. Medical History

Smith was seen on February 8, 2008 at the Craig County Health Center complaining of depression and reporting mood swings and difficulty sleeping and eating properly. R. 215. At a follow-up visit on February 25, 2008, she indicated she was "doing much better" with improved mood and anxiety; however, she reported problems sleeping. R. 214. Smith had subsequent follow-up visits at Craig County Health Center in July and August 2008, and she indicated that her anxiety symptoms improved when taking Lexapro. R. 212–13. On October 5, 2010, Smith saw Catherine Taylor, Psy. D. who diagnosed depressive disorder, not otherwise specified, ADHD, schizoid personality disorder, chronic academic and attentional difficulties, chronic impulsivity, and chronic depression.[6] R. 229. Dr. Taylor noted that Smith had "mostly borderline cognitive abilities and achievement skills" but that she was "able to easily process and hold visual information in short-term memory to efficiently complete tasks" such that repetitive, visually based jobs such as work on a line or in a warehouse" would likely be "easy for her." R. 227. Dr. Taylor also assessed a GAF score of 45.[7] Id.

State agency psychologist Joseph Leizer, Ph.D. reviewed the medical evidence in July 2011 in connection with Smith's initial disability application. R. 64–73. State agency

---

[6] Dr. Taylor evaluated Smith at the request of the Department of Social Services, for purposes of making recommendations for Smith's treatment, as well as the placement of one of Smith's seven children. R. 223. At the hearing before the ALJ, Smith moved for a psychological consultative examination, which was denied because the ALJ determined that "adequate evidence about the claimed impairments" existed to determine disability. R. 14.

[7] A GAF score of 41-50 denotes serious symptoms. The GAF Scale is used by mental health professionals to rate overall functioning and considers the psychological, social, and occupational functioning of an individual on a hypothetical continuum of 1 to 100. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Rev.2000) (DSM IV), with 100 being the most high-functioning.

The ALJ gave little weight to the GAF score provided by Dr. Taylor, indicating that Dr. Taylor did not "provide a basis for her opinion" or document "specific findings in support of the score" and further, that "the score is inconsistent with [Smith's] treatment records which show only conservative and infrequent treatment for mental health." R. 22.

psychiatrist Andrew Bockner reviewed the medical evidence in April 2012 in connection with her request for reconsideration. R. 74–83. Drs. Leizer and Bockner both indicated that Smith had no restrictions in activities of daily living, and moderate difficulties maintaining social functioning and maintaining concentration, persistence, or pace. R. 67, 77.

### B. Mental Impairments

Smith argues that the ALJ failed to properly address her mental impairments at Steps 4 and 5, as required by Social Security Ruling ("SSR") 96-8P.[8] See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Smith asserts that, "Simply limiting plaintiff to low stress work with only occasional interaction with co-workers or the public . . . is not enough to fulfill SSR 96-8P" and that "the ALJ must discuss plaintiff's mental limitations in detail." Pl. Mem. Summ. J. p. 8, Dkt. No. 15.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878, at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, __F.3d.__, No. 15-1098, 2016 WL

---

[8] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

5

3349355, at *10 (4th Cir. June 16, 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

Here, the ALJ's discussion of Smith's mental limitations satisfies the requirements of SSR 96-8P. The ALJ considered both medical and non-medical evidence in assessing Smith's RFC and provided the narrative discussion required by the regulations. The ALJ touched on the history of Smith's mental symptoms and reviewed her mental health treatment, including her 2010 psychological evaluation by Dr. Taylor, and the records review by state agency psychologists Drs. Leizer and Bockner. R. 21–22. The ALJ noted that Dr. Taylor administered an Integrated Visual and Auditory Continuous Performance Test that was in the low average range and a Beck Depression Inventory that showed mild depression and borderline anxiety. R. 21. The ALJ specifically referenced Dr. Taylor's conclusion that Smith "would likely do well at jobs that were repetitive and visually based." Id. The ALJ gave great weight to the opinions of Drs. Leizer and Bockner. He emphasized that Dr. Bockner completed a Mental Residual Functional Capacity Assessment Form indicating that, while Smith was moderately limited in learning and performing detailed work and coping with interpersonal stress, she could follow simple one and two-step instructions, ask simple questions, and request assistance, and would be able to perform competitive work on a 40-hour workweek basis. R. 79–81.

The ALJ also noted that Smith had undergone only "infrequent and conservative treatment" and moreover, that she had, had no mental health treatment since the date of her disability application and was not taking mental health medication at the time of the hearing. R.

6

21, 49. Indeed, the ALJ pointed to a treatment record from August 2013, indicating that Smith had no anxiety, depression or sleep disturbances. R. 21, 269.

The ALJ also considered Smith's testimony as to her daily activities and social interaction, including that she had "a hard time dealing with others," had difficulty around large groups, difficulty concentrating, difficulty with fatigue, and difficulty "keeping up with the pace at her prior jobs." R. 20. However, Smith also testified that she had "no problems cleaning her home," could shop by herself or with her boyfriend, provided there were few people in the store, could interact with small groups, and attended drag racing events as a hobby. R. 20–21, 42, 48. The ALJ further noted that Smith had reported washing clothes and dishes, taking out trash, preparing meals, feeding animals, shopping in stores, counting change, using a checkbook, paying bills, watching television, reading, and attending movies with her boyfriend on her Function Report. R. 21, 174–78.

The ALJ considered the medical opinions, claimant's testimony, and evidence of mental impairment, and explained the basis for his ruling, thus, the court is capable of meaningfully reviewing the RFC. See Taylor v. Astrue, No. 11-cv-32, 2012 U.S. Dist. LEXIS 11307, at *17, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (noting that while SSR 96-8 requires an ALJ to consider the evidence presented on a function-by-function basis, it does not require the ALJ to produce such a detailed statement in writing, but rather is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions); see also Monroe, 2016 WL 3349355, at *10 (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) (finding that "[a] necessary *predicate* to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ

7

found credible and why, and specific application of the pertinent legal requirements to the record evidence.").

Smith also argues, relying on Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), that the ALJ erred by failing to address Smith's moderate difficulties regarding concentration, persistence, or pace in assessing her RFC, and failing to provide a hypothetical question to the VE that addressed these moderate difficulties. In Mascio, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary.[9] Id.

However, this is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Here, the ALJ accounted for Smith's moderate impairments in concentration, persistence, and pace in both his hypothetical

---

[9] Thus, Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. 780 F.3d 638. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ's responsibility to highlight the evidence of record that supports his conclusion was further emphasized recently in Monroe, where the Court of Appeals found that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and "specific application" of the law to the record. See Monroe, 2016 WL 3349355, at *10 (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

8

question to the VE and the RFC finding in his decision. The ALJ's hypothetical question and RFC assessment limited Smith to low stress work, defined as a job with only occasional decision-making or changes in work setting, and only occasional interaction with coworkers and members of the public. R. 20, 52.

Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite her moderate limitation in concentration, persistence, or pace, Smith is capable of performing the basic mental demands of low-stress work with only occasional interaction with co-workers or the public. The ALJ emphasized that the opinions of Drs. Leizer and Bockner are consistent with Smith's treatment records, "the notes from [Dr. Taylor's examination] . . . that [Smith] could do well in an environment where her work was repetitive, easy, with limited contact with people," as well as Smith's "own testimony of cooking, cleaning, shopping, and going to races." R. 22. Thus, this court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637; see also Massey v. Colvin, No. 1:13-cv-965, 2015 U.S. Dist. LEXIS 79708, at *20, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 U.S. Dist. LEXIS 77846, at *8, 2015 WL 3757204, at *3 (N.D. W. Va., June 16, 2015).

### C. Credibility

Smith argues that the ALJ's credibility findings are not supported by substantial evidence. Smith asserts that the activities cited by the ALJ to support his conclusion that Smith is less than credible, were "performed intermittently and at her own pace" and also do not "reflect upon [Smith's] limitations regarding concentration, persistence, or pace." Pl. Mem. Summ. J. p. 12, Dkt. No. 15.

9

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Smith's subjective allegations of her disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the Record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weight them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P, (July 2, 1996).

In this case, the ALJ found that Smith's statements regarding the severity of her limitations were not wholly credible because they were not supported by the objective medical evidence, her treatment history, and her daily activities. R. 21–23. The ALJ's opinion includes a detailed consideration of Smith's medical history along with Smith's own allegations. After a review of Smith's treatment records and allegations of disability, the ALJ stated:

> [I] find that [Smith's] medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, [Smith's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

R. 21. The ALJ outlined his reasons for this determination, including that Smith's allegations regarding the severity of her limitations were not fully consistent with the evidence of record, that "she has undergone only infrequent and conservative treatment for her impairments," and that she has had no mental health treatment since the date of her disability application. R. 21. The ALJ specifically noted the results from Dr. Taylor's 2010 psychological evaluation, as well as the conclusions of the state agency physicians, discussed above. The ALJ also stated that Smith "described daily activities that are not limited to the extent one would expect given her complaints of disabling symptoms and limitations" and referenced Smith's testimony during the

10

hearing that she shopped in stores, left the house to watch drag racing, and was able to care for herself and complete household chores. R. 22; see Dolfax v. Astrue, 7:09-cv-67, 2010 U.S. Dist. LEXIS 37181, at *34, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)).

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

After a review of the entire record, I find that substantial evidence exists to support the ALJ's determination that Smith's testimony is only partially credible, and that Smith is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: August 10, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge