CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
Sept. 30, 2016
JULIA C. DUDLEY, CLERK
BY: A. Melvin
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANGELA A. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:15-cv-00234 |
| ) | |
| CAROLYN COLVIN, ACTING ) | |
| COMMISSIONER, SOCIAL SECURITY ) | By: Elizabeth K. Dillon |
| ADMINISTRATION, ) | United States District Judge |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Angela A. Smith brought this action for review of defendant Carolyn W. Colvin's (the commissioner's) final decision denying her claims for supplemental security income (SSI) under the Social Security Act (the Act). *See* 42 U.S.C. § 405(g) (2012) (authorizing a district court to enter judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security"). The parties filed cross-motions for summary judgment, which the court referred to United States Magistrate Judge Robert S. Ballou for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In his report, the magistrate judge concluded that substantial evidence supported the commissioner's decision. (Dkt. No. 21.) Smith timely objected, and defendant filed a response to the objections. (Dkt. Nos. 22, 23.) After de novo review of the pertinent portions of the record, the report, and the filings by the parties, in conjunction with applicable law, the court agrees with, and will adopt in full, the magistrate judge's recommendation. Accordingly, defendant's motion for summary judgment will be granted, and plaintiff's motion for summary judgment will be denied.

I. BACKGROUND

The court adopts the recitation of facts and procedural background as set forth in the report. (Dkt. No. 21.)

II. DISCUSSION

A. Standard of Review

This court's review of the ALJ's underlying decision is limited. Specifically, "[a] district court's primary function in reviewing an administrative finding of no disability is to determine whether the ALJ's decision was supported by substantial evidence." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence does not require a "large or considerable amount of evidence" *Pierce v. Underwood*, 487 U.S. 552, 564–65 (1988); rather, it requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This is "more than a mere scintilla of evidence [and] somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Where, as here, a matter has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1), this court reviews de novo the portions of the report to which a timely objection has been made. Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *United States v. Raddatz*, 447 U.S. 667, 673–74 (1980) (finding that de novo review of the magistrate's report and recommendation comports with due process requirements).

In order for an objection to trigger de novo review, though, it must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). *See also Page v. Lee*,

337 F.3d 411, 416 n.3 (4th Cir. 2003) ("[P]etitioner's failure to object to the magistrate judge's recommendation with the specificity required by the Rule is, standing alone, a sufficient basis upon which to affirm the judgment of the district court as to this claim."). Further, objections must respond to a specific error in the report and recommendation. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). General or conclusory objections, therefore, are not proper; they are in fact considered the equivalent of a waiver. *Id*. Likewise, an objection that merely repeats the arguments made in the briefs before the magistrate judge is a general objection and is treated as a failure to object. *Moon v. BWX Techs*, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), *aff'd*, 498 F. App'x 268 (4th Cir. 2012) (citing *Veney v. Astrue*, 539 F. Supp. 2d 841, 844–46 (W.D. Va. 2008)).

Most of Smith's objections are sufficiently specific to trigger de novo review, and reviewing de novo, the court concludes that the magistrate judge's report and recommendation reached the proper conclusions. As to those objections that are too general to meet this standard, the court addresses them briefly and notes that, even if the court were to review them de novo, they are not meritorious.

**B. ALJ's Decision**

On November 18, 2013, the ALJ entered his decision analyzing Smith's claim, ultimately concluding that Smith was ineligible for benefits. In reaching his decision, the ALJ followed the five-step process found in 20 C.F.R. § 404.1520 (2016). The five-step evaluation asks the following questions, in order: (1) whether the claimant is working or participating in substantial gainful activity; (2) whether the claimant has a severe impairment of the duration required by 20 C.F.R. § 404.1509; (3) whether she has a type of impairment whose type, severity, and duration meets the requirements listed in the statute; (4) whether she can perform her past work, and if

3

not, what her residual functional capacity (RFC) is; and (5) whether work exists for the RFC assessed to the claimant. 20 C.F.R. § 404.1520(4)(i)–(v). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A).

In this case, because Smith had not engaged in substantial gainful activity, the ALJ analyzed whether Smith suffered from severe impairments and found that she suffered from the severe impairments of depression, ADHD, schizoid personality disorder, and insomnia. (ALJ Decision, Administrative Record (R.) 16, Dkt. No. 8-1.) The ALJ then found that Smith's mental impairments did not meet or medically equal any listed impairments. (*Id.* at 18–20.) In doing so, he considered her severe impairments as well as her moderate limitation in maintaining social functioning and moderate limitation in maintaining concentration, persistence, and pace. (*Id*. at 18.)

The ALJ then evaluated Smith's RFC, considering her severe impairments, noted above, and non-severe impairments of moderate limitations in social functioning and concentration, persistence, and pace. He found that her impairments "could reasonably be expected to cause the alleged symptoms" (*id*. at 21), consisting of difficulty dealing with others especially in large groups, difficulty concentrating, intermittent fatigue, feeling groggy, difficulty keeping focus and keeping up with the pace of prior jobs, and occasions of feeling like she will have a panic attack or that she wants to cry. (*Id*. at 21–22.) He then noted, however, that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (*Id*. at 21.) Her test results on various inventories showed no lower than low-average scores on a

4

continuous performance test, only mild depression, and a borderline range of anxiety. (*Id.* at 21.) She had only infrequent and conservative medical treatment with no therapy and no medication. (*Id.*) Additionally, her self-reported daily activities were "not limited to the extent one would expect given her complaints of disabling symptoms and limitations." (*Id.* at 22.) She reported cleaning her home, washing clothes and dishes, taking out trash, feeding animals, personal care, preparing meals, shopping in stores, watching television, reading, going to the movies, and going to drag races. (*Id.* at 21-22.)

Given her impairments, the medical professionals opined that she could work. Dr. Taylor stated that she "would likely do well at jobs that were repetitive and visually based." (*Id.* at 21.) If the work were repetitive, easy, and involved limited contact with people, Smith could do well according to Dr. Taylor. (*Id.* at 22.) The ALJ found Dr. Leizer's evaluation of Smith's moderate limitations in social functioning and in maintaining concentration, persistence, and pace to be consistent with Dr. Taylor's opinion and Smith's own testimony about her activities. (*Id.*) Dr. Bockner opined that she could perform simple instructions, ask simple questions, request assistance appropriately, and work in small groups rather than large groups. (*Id.* at 23.) Thus, she could "perform competitive work on a 40-hour workweek basis." (*Id.*)

Given the above, the ALJ concluded that Smith retained the RFC to perform a full range of work with no limitation regarding the level of exertion. (*Id.* at 20.) Based on Smith's underlying impairments, though, the ALJ found her further limited to work that is low stress (meaning work that involves only occasional decision-making or changes in work setting) and that involves only occasional interaction with co-workers or the public. (*Id.*)

After noting that Smith had no past relevant work and based on Smith's RFC and the testimony of a vocational expert (VE) at the hearing, the ALJ then concluded that she could

5

perform the jobs of cleaner, warehouse worker, and assembler. (*Id*. at 24.) Thus, he determined that she was not eligible for benefits. (*Id*. at 25.) In his report, the magistrate judge concluded that substantial evidence supported the ALJ's decision.

### C. Smith's Objections

#### 1. The magistrate judge correctly found that the ALJ took into account Smith's limitations in concentration, persistence, and pace.

Smith's first objection is that the report failed "to acknowledge that a limitation to low stress work with only occasional decision-making or changes in work setting addresses the skill level of work and not whether an individual can maintain concentration, persistence, or pace to satisfactorily perform work." She further contends that the report erroneously concluded that the evidence cited by the ALJ supported his decision. (Pl.'s Obj. 1–2, Dkt. No. 22.) Relatedly, she argues—as she did before the magistrate judge—that the ALJ did not properly evaluate her "mental impairments under SSR 96-8p." (*Id.* at 3.) Her first objection is not well-founded.

As to her contention that the ALJ did not follow SSR 96-8p, that ruling "requires that the RFC assessment 'include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence (e.g., daily activities, observations).'" *St. Clair v. Colvin*, No. 7:13-cv-571, 2015 WL 5310777, at *14 (W.D. Va. Sept. 11, 2015) (quoting SSR 96-8p, at *7). Upon review of the ALJ's decision and for all of the reasons discussed at length by the magistrate judge (Dkt. No. 21 at 5–8), the court agrees with the magistrate judge that "the ALJ's discussion of Smith's mental limitations satisfies the requirements of SSR 96-8p." (*Id.* at 6).

In support of her first objection, Smith also points to *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In *Mascio*, the court acknowledged that "the ability to perform simple tasks differs from the ability to stay on task," and held that remand was required because the ALJ did not

either include a limitation in concentration, persistence, or pace in his hypothetical or explain why such a limitation did not affect the claimant's RFC. *Id*. at 638. In *Mascio*, however, the ALJ failed to give any explanation at all and therefore remand to the Agency was required. *Id*. That is not the case here.

As the magistrate judge recognized (Dkt. No. 21 at 8–9), the ALJ's decision here differs materially from the decision in *Mascio*. Here, the ALJ set forth a very detailed, claimant-specific analysis that included: 1) consideration of her impairments in social interaction, concentration, persistence, and pace; 2) why those impairments were not as significant as alleged; 3) medical evaluations of the impairments; 4) medical opinions about work that Smith would be able to do given those impairments; and 5) medical opinions about work conditions and limitations Smith needed to work. (*Id.* at 20-23.) Additionally, unlike in *Mascio*, Smith's RFC did not simply limit her to simple tasks or unskilled work. It limited Smith to low-stress work, involving only occasional decision-making, only occasional changes in setting, and only occasional interaction with co-workers and the public. These limitations—which were based on ample medical evidence—account for Smith's moderate limitation in concentration, persistence, and pace. *See Willis v. Colvin*, No. 15-cv-2301, 2016 WL 3440126, at *7 (D. Md. June 22, 2016) (holding that the ALJ accounted for the claimant's moderate difficulties in maintaining concentration, persistence, or pace where the RFC restricted her to "only occasional decision-making judgment" and "only occasional changes in the work setting" and collecting cases with similar holdings); *Eastwood v. Colvin*, No. 3:15-cv-156, 2016 WL 805709, at *4 (E.D. Va. Feb. 12, 2016) (reasoning that substantial evidence supported the ALJ's decision where, to account for the claimant's moderate impairment in concentration, persistence, or pace, the RFC accounted for persistence through limitations of "few workplace changes," "little independent decision-

7

making" and "no assembly-line pace," respectively, and where the ALJ recounted the claimant's medical records in detail to explain the basis of his conclusions), *report and recommendation adopted without objection*, 2016 WL 881123 (E.D. Va. Mar. 1, 2016).

Contrary to Smith's objection, moreover, medical evidence discussed and relied upon by the ALJ supports the RFC. In particular, the reports of Drs. Leizer and Bockner, both of which were given great weight by the ALJ, support Smith's RFC as determined by the ALJ. Dr. Leizer's psychiatric review noted that "the claimant had moderate limitations in understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, and completing a normal workday and work week without interruptions from psychologically based symptoms." (R. 22.) The ALJ found that opinion consistent with Dr. Taylor's 2010 examination of Smith, which indicated that Smith could do well in an environment where her work was repetitive, easy, and had limited contact with people. (*Id.* (citing Exhibit 2F).) Likewise, Dr. Bockner maintained that Smith was able to perform "competitive work on a 40-hour workweek basis" despite her "moderate limitations in maintaining concentration, persistence, or pace." (*Id.* at 22–23.) He asserted that she would be able to perform duties with simple one- and two-step instructions, would be able to ask simple questions and would work best around small numbers of people. (*Id.* at 23.) This medical evidence adequately supports the RFC as found by the ALJ.

For the foregoing reasons, Smith's first objection is overruled.

### 2. The magistrate judge correctly found that the ALJ asked sufficient hypothetical questions regarding Smith's mental limitations in concentration, persistence, and pace.

Smith next argues that the magistrate judge erred by finding the ALJ properly took into account her moderate limitations in concentration, persistence, and pace in the hypothetical

8

questions he posed to the vocational expert at the administrative hearing. Smith relies on the *Mascio* court's statement that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638. Instead, the hypothetical must somehow incorporate the limitation in concentration, persistence, and pace, or, in explaining the RFC, the ALJ must explain why the limitation is accounted for by unskilled work. *Id.* (discussing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011), which noted that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations").

As an initial matter, as *Mascio* itself made clear, where—as here—the RFC findings and the hypothetical question posed to the VE match, the hypotheticals were "incomplete only if the ALJ failed to account for a relevant factor when determining [the claimant's RFC]." *Mascio*, 780 F.3d a 638. The court has already concluded that RFC was supported by substantial evidence and was not incomplete, and the same reasoning applies to the hypothetical question posed to the VE.

As already noted, both the hypothetical and the RFC included a limitation to "low-stress work (defined as a job with only occasional decision-making or changes in work setting)" and further limited her to "only occasional interaction with co-workers or the public." (R. 20; R. 52 (hypothetical posed to VE during hearing).) And the ALJ explained that he had accounted for moderate limitations in both social functioning, and concentration, persistence, and pace (R. 21), relying on the medical opinions of Drs. Leizer and Bockner, as well as the evaluation of Dr.

9

Taylor (*id.* at 21–23). Thus, the hypothetical question posed to the VE was proper. Smith's second objection is overruled.[1]

### 3. The magistrate judge correctly found that substantial evidence supports the ALJ's finding that Smith's complaints were not consistent with the evidence.

Lastly, Smith objects to the magistrate judge's conclusion that substantial evidence supports the ALJ's credibility findings. She again argues that the magistrate judge failed to account for her ability to stay on task, as opposed to her ability to perform a task. She argues that "[t]he activities cited by the ALJ [as supporting her ability to stay on task] occurred either occasionally or on an intermittent basis with frequent rest breaks." (Pl.'s Obj. 4.) She also contends that the ALJ's description of her ability to care for herself and work reflects a misunderstanding of how much she relies on others to help her with daily activities. (*Id.* at 4.)[2]

The court again finds no error in the ALJ's findings or conclusions. The court has already discussed in detail the ALJ's consideration of Smith's ability to stay on task. This objection asks this court to resolve inconsistencies between the claimant's testimony and the evidence of her ability to work. That is the province of the ALJ, and it is inappropriate for either the magistrate judge or this court to interfere with the determination of credibility. Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally

---

[1] It is true that, in two other hypothetical questions that did not correspond with the RFC ultimately found by the ALJ, the ALJ included more direct limitations based on concentration, persistence, or pace. Specifically, in those two questions, the ALJ included the additional limitations that the person could work only at simple, routine, repetitive tasks in an environment free of fast paced production requirements, and that the person would be off task to some degree, but not more than a certain percentage of the workday. (R. 53–54.) But, as already discussed in this section, the ALJ accounted for Smith's moderate impairment in this area by the limitations in the RFC. And the medical evidence as recounted by the ALJ did not require the additional limitations referenced in the second or third hypothetical questions.

[2] Smith consistently claims error in the magistrate judge's analysis of the ALJ's credibility determination, but in fact her argument is that she simply disagrees with his conclusions. The evidence of Smith's ability to care for herself and perform basic tasks was thoroughly examined by the ALJ. Despite this, the court has reviewed it de novo, but finds no error.

should not interfere with these determinations.  SSR 96-4p (1996).[3] *See, e.g.*, *Chafin v. Shalala*, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964)) ("It is not the proper province of the courts to second-guess the ALJ's credibility determinations.").

### III.  CONCLUSION

After a de novo review of the record, this court finds that the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards.  Accordingly, this court will overrule Smith's objections and adopt the magistrate judge's report and recommendation in full.  The court will therefore grant the commissioner's motion for summary judgment and deny Smith's motion for summary judgment.

An appropriate order will be entered.

Entered: September 30, 2016.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[3] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Soc. Sec. Ruling 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016).  The older ruling was still in effect at the time of the ALJ's decision and neither party has challenged its application here.  Furthermore, the updated guidance does not affect the law holding that it is the ALJ's province to determine whether a claimant's subjective complaints are supported by the medical evidence.